IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cr-88-WKW-TFM |
| | ) | [wo] |
| IVORY VERNELL NEVELS | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  The defendant, Ivory Vernell Nevels ("Nevels" or "Defendant"), was charged in an indictment on May 30, 2013, with one count of passing counterfeited and altered obligation and other security of the United States in violation of 18 U.S.C. § 472; one count of trafficking goods using counterfeit marks that were in use and registered in the principal register of the United States Patent and Trademark Office in violation of  18 U.S.C. § 2320(a); and two counts of infringing a copyright.  *See* Doc. 1. Pending before this Court is a *Motion to Suppress Evidence and Citations of Authority* (Doc. 15, filed September 3, 2013) with regards to "any and all evidence obtained as a result of the unlawful arrest and search of Mr. Nevels."

The Court convened an evidentiary hearing on the motion on October 15, 2013.  *See* Doc. 27.  Based on the evidence presented to the Court, arguments of the parties, and for the

reasons herein, the Magistrate Judge recommends that the motion to dismiss be **DENIED**.

## II.  FACTS

The initial facts about how this case was initiated are partially in dispute. The Defendant asserts that this case was initiated on October 25, 2010, when officers from the Millbrook Police Department responded to a complaint made by the manager at the Metro Petro service station ("Metro Petro"). *See* Doc. 15 at 1. The manager told the officers that he suspected a man who purchased $1,200 in money orders passed counterfeit twenty dollar bills. *Id.* The Government asserts that on October 22, 2010, a bank teller with Alliant Bank called Secret Service Special Agent Scott Brown ("Brown") to report the receipt of twenty-three counterfeit twenty dollar bills from Metro Petro in their night deposit box. *See* Doc. 19 at 1.

The Court discens from the testimony given during the hearing that on or about October 21, 2010 an employee at the Metro Petro received twenty-three counterfeit twenty dollar bills. The counterfeit bills were not identified as counterfeit until after their deposit at Alliant Bank, whereupon a bank teller identified them as counterfeit. The Metro Petro employee as well as the manager, Dippen J. Patel ("Patel"), believe they were able trace the counterfeit bills to a prior transaction which involved the purchase of $1,200 in money orders. Patel and his employee reviewed security camera footage and identified the man who purchased the money orders as Nevels. Nevels has a residence behind Metro Petro and regularly visits the service station.

On or about October 25, 2010, Detective L.K. Pelham ("Detective Pelham") of the Millbrook Police Department responded to Metro Petro's complaint regarding the passage of counterfeit bills. *See* Doc. 15 at 1. On or about November 2, 2010, Detective Pelham received a copy of the video footage of the transaction. *See* Doc. 15 at 2. Detective Pelham immediately recognized Nevels, someone whom he had arrested before on a counterfeit merchandise charge, as the man in the video. *Id.* After reviewing the evidence, Detective Pelham obtained an arrest warrant for Nevels for criminal possession of a forged instrument. *See* Doc. 19 at 2.

On or about November 8, 2010 at approximately 1:30 p.m., Detective Pelham, with the assistance of Prattville police officers and Agent Brown, went to 131 S. Memorial Drive which serves as both Nevels' place of business and residence to execute the arrest warrant. *See* Docs. 15 at 2; 19 at 2. The address is within a strip mall surrounded by other businesses. The officers staked out the location, and eventually saw Nevels. *Id.* While sitting in his vehicle, Detective Pelham greeted Nevels through his vehcile's open window, whereupon Nevels went into the back entrance of the building. *Id.* The officers went around to the front business entrance; however, the front doors were locked. *Id.* The officers then went around to the back entrance, did a "knock and announce." *Id.* After no response, the officers forcibly entered the premises through the back door which was barricaded by a dresser. *Id.*

Upon entering the premises, the officers found Nevels and his son, and ordered them both to get down on the floor. *Id.* Upon reaching Nevels, and after doing a protective sweep,

officers noticed several items in plain view which appeared to be evidence of a counterfeiting/bootlegging operation. *Id.* Based upon the evidence he saw on the premises, Detective Pelham contacted detectives with the Prattville Police Department who had proper jurisdiction to pursue the case. *Id.* Sergeant Gary Graves ("Sergeant Graves") arrived on the scene and Detective Pelham escorted him through the premises. *See* Docs. 15 at 3; 19 at 3. Based upon the evidence Sergeant Graves saw in plain view, and after consulting with the Autauga County District Attorney Office, Sergeant Graves sought and received a search warrant for the premises from Autauga County District Judge Joy Booth. *Id.*

During the late-afternoon/evening of November 8, 2010, officers executed the search warrant on the premises. *Id.* The officers seized:

> a Mossberg, model 500A, 12 gauge pump shotgun and ammunition wrapped in a pillowcase, along with paperwork from Chisholm Gun and Pawn showing the purchaser as Nevels' housemate, located in a locked trunk in the hallway; 7037 movie dvd's; 6785 music cd's; jewelry; shoes; shirts; pants; hats; purses; wallets; watches; sunglasses; cologne; key chains; socks; jeans; Compaq desktop computer MXX94509ZL; Compaq desktop computer CNH51504HS; 2 counterfeit $20 bills; 3 Kanguru Solutions dvd recorder towers; Ativa monitor TPSG0990042B0466A; black keyboard; Lexmark printer 41401719418; Lexmark printer/copier 0002D396782; HP printer/copier MY98E2J5W0; Vitar digital camera; paper cutter; HP laptop computer CNF7424WBH; HP Desk Jet scanner/printer CN9AS1616H; USB thumb drive; router; modem; $16,940 assorted US currency; 1 black binder with photocopied image of Benjamin Franklin (from a US $100 bill); and large amounts of stock copy paper

*See* Doc. 19 at 3.

### III.   ISSUES

Nevels raises three issues for judicial review:

(1) Whether the November 2, 2010 arrest warrant was supported by probable cause;

(2) Whether the November 8, 2010 execution of the arrest warrant violated Nevels' Fourth Amendment Rights; and

(3) Whether Sergeant Graves' reentry into the building prior to securing a search warrant amounted to an illegal search.

*See* Doc. 15 at 4.

## IV.  DISCUSSION

**A.     Probable Cause**

Defendant argues that Detective Pelham lacked probable cause to obtain an arrest warrant because he was unable to establish all of the elements of the crime. *See* Doc. 15 at 4-7. Defendant cites Alabama law which states that "[a] person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument... with knowledge that it is forged and with intent to defraud." *See* Doc 15 at 5 (quoting Ala. Code § 13A-009-006 (1975)). Defendant argues that Detective Pelham did not have any evidence to prove, beyond the mere possession of counterfeit currency, Nevels knew that he was passing counterfeit money to the gas station attendant. *See* Doc. 15 at 6. Defendant avers that "without any evidence that Mr. Nevels had 'knowledge' of the counterfeit nature of the monies, or evidence that the money was presented with the 'intent to defraud' there is no offense," and thus the arrest warrant should be suppressed. *Id.*

Probable cause is a requirement placed upon government officials to justify intrusions

upon private interests that are protected by the Fourth Amendment. *See Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911 (1996). The Supreme Court has found that precisely articulating what "probable cause" means is not possible because it is a "commonsense, nontechnical" concept that involves "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Id.* (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). The Supreme Court has stated that probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.* at 696, 116 S. Ct. at 1661 (citing *Brinegar*, 338 U.S. at 175–176, 69 S.Ct. at 1310–1311; *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)); *see also United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983) ("Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed").

Prior to issuing a warrant, an impartial judicial officer must determine whether the police have probable cause to make an arrest, conduct a search, or seize "evidence, [. . .] instrumentalities, fruits of crime, or contraband." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 301, 87 S. Ct. 1642, 1647, 18 L. Ed. 2d 782 (1967). The judicial officer is required to make an independent assessment of all of the facts and circumstances that are present in

the warrant application, which includes the supporting affidavit(s), to determine if it "contains a sufficient amount of information to support a finding of probable cause." *U.S. v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002). The evidence presented in the warrant application must provide the judicial officer with a "substantial basis" to determine that probable cause exists. *Jones v. United States*, 362 U.S. 257, 269, 80 S. Ct. 725, 735, 4 L. Ed. 2d 697 (1960) *overruled on other grounds by U. S. v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980).

Here, the facts establish that twenty-three counterfeit twenty dollar bills were passed at Metro Petro; the store attendant and manager believe they were able to trace the bills to a large money order transaction; upon reviewing the tape of the suspected transaction, Detective Pelham identified Nevels from a past encounter related to counterfeit merchandise; and Detective Pelham sought an arrest warrant for Nevels. Defendant argues that there is no evidence to prove that the bills were passed in Nevels' transaction, and even if the bills could be traced to that transaction, there is no evidence Nevels knowingly passed the counterfeit bills.

With regard to Defendant's assertion that there is no proof that the counterfeit bills were passed by Nevels, the Government points to Detective Pelham's testimony. Detective Pelham testified that Mr. Patel reported his belief that the counterfeit bills could be traced to that specific transaction because Metro Petro has a procedure in place for transactions that involve large sums of money. *See* Doc. 32 at 82-83. The procedure involves placing rubber

bands around all large cash transactions and separating the bills from those currently in the register. *Id.* Mr. Patel reported that this procedure was followed by his store attendant following the large cash transaction conducted by Nevels, and the counterfeit bills were located within the separated bills. *Id.* Defendant has failed to rebut the claim that this procedure was properly followed; in fact during the hearing Defendant pointed out the service station attendant putting a rubber band around the money during Nevels' transaction. *See* Doc. 32 at 23-25. Thus the Court finds it is reasonable to believe that Mr. Patel was able to trace the counterfeit bills back to the large cash transaction involving Nevels.

Additionally, Defendant argues that the Government failed to present any evidence that establishes that Nevels "knowingly" passed counterfeit currency with the "intent to defraud," an element of criminal possession of a forged instrument under Alabama law. *See* Ala. Code §§ 13A-9-5 to 13A-9-7. However, "probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors. We have no clearly established law that places such a burden on [an] arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001).

Here, Detective Pelham was notified of a transaction that involved twenty-three counterfeit twenty dollar bills, and recognized the individual in the security footage as Nevels. Detective Pelham recognized Nevels as a result of previously arresting him for counterfeit merchandise. Not only does Detective Pelham not bear the burden of establishing

every element of the crime, but with Detective Pelham's knowledge of Nevels' past criminal activity of a similar nature, the passing of twenty-three counterfeit bills, not just one or two, Detective Pelham logically inferred that Nevels was acting knowingly and with the intent to defraud.  Therefore, Defendant's motion to suppress the arrest warrant is due to be denied.

### B.     Knock and Announce

Defendant argues that the officers executing the arrest warrant failed to abide by the "knock and announce" requirement in violation of the Fourth Amendment.  *See* Doc. 15 at 7.  The Supreme Court of the United States stated that "[a]n examination of the common law of search and seizure leaves no doubt that the reasonableness of a search of a dwelling may depend in part on whether law enforcement officers announced their presence and authority prior to entering." *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S. Ct. 1914, 1916, 131 L. Ed. 2d 976 (1995).  The "knock and announce" requirement dates back to the common law of England which remained in force as the American colonies formed and the legislatures of each state enacted it into law:

> But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors ..., for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, of which, if he had notice, it is to be presumed that he would obey it....

*Id.* at 931-32, 115 S. Ct. at 1916-17 (quoting *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng.Rep. 194, 195 (K.B.1603)).  The Court ultimately held that an officer's failure to follow the "knock and announce" requirement, except under exigent circumstances, is one of many

factors used in the reasonableness inquiry under the Fourth Amendment. *Id.* at 934, 115 S. Ct. at 1918.

Here, according to the testimony, officers arrived at Stack O Dollar and while observing the business[1] saw Nevels approaching the rear entrance. Detective Pelham testified that he said "Mr. Nevels!" through his vehicle's open window and Nevels looked, but continued toward his business and went inside. The officers then went around to the front entrance of the business to walk in through what they assumed would be the public entrance. Upon discovering the door was locked, the officers went around to the back door, except one officer who stayed at the front entrance.[2] Each of the officers present testified that upon reaching the back door, they heard loud music.[3] In fact, a neighboring business had called the police to file a noise complaint a matter of minutes before the officers arrived to execute the arrest warrant. The officers testified that Officer Ray knocked on the rear door and announced that they were the police multiple times, and after about a minute passed from

---

[1] Stack O Dollar served as a hybrid business and residence for Nevels; however, the Court will refer to the structure as a business throughout the recommendation for no other reason than because it was located in a commercial strip mall. The Court's use of this term is for identification purposes only, and does not ignore that there are different expectations of privacy between a business and a residence.

[2] Testimony on whether the officers knocked or made any announcement at the front entrance varied based on each officer's testimony, without any direct answer whether they did or not. Thus, without any definitive answer the Court is unable to conclude that a knock and announce was made on the front entrance.

[3] To reach the back door of Stack O Dollar, the officers had to enter an outside facing door that leads to a common area shared by two businesses. Upon entering the outside door, Stack O Dollar's rear entrance was to the left, and the neighboring business's rear entrance was to the right. *See* Defense Exhibit # 12

the initial knock (ten seconds from the last knock) with no response, the officers made forcible entry into the business.[4] *See* Doc. 32 at 39-40, 47, 71, 91-92, 102.

Defendant claims that no "knock and announce" was made because he did not hear the officers knock on the door or verbally announce their presence. However, the law only requires that a knock and announce is made; it does not require that the suspect heard the announcement. *United States v. Banks* involved the execution of a search warrant for cocaine where the officers called out "police search warrant" and knocked on the front door of the residence, but after no response for fifteen seconds, the officers made forcible entry. 540 U.S. 31, 31, 124 S. Ct. 521, 522, 157 L. Ed. 2d 343 (2003). Banks happened to be in the shower at the time of the "knock and announce" and was unable to hear the officers until they broke down the door. *Id.* The Court emphasized that an officer's knowledge of the facts at the time of the warrant's execution is what counts and quoted their prior holding that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 39, 124 S. Ct. at 527 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).[5]

---

[4] Agent Brown was unable to confirm whether there was a knock and announce. Agent Brown said he was the last officer in line and was outside of the main building at the time. He was far enough away that due to the loud music he was unable to hear anything distinctly. *See* Doc. 32 at 135.

[5] The Court's ultimate holding was related to what constitutes a reasonable time prior to forcible entry, including considerations to exigent circumstances, which are not in contention under this suppression issue.

Here, it is undisputed that loud music was emanating from Stack O Dollar. The music was loud enough to cause the neighboring business to call the police and file a noise complaint. Just because Nevels was unable to hear the "knock and announce" over his loud music does not mean it never occurred. All of the testimony points to a "knock and announce" being made, receiving no response, and then the officers making forcible entry. In hindsight, the Court finds it reasonable to assume that because of the loud music Nevels did not hear the "knock and announce" and the Court believes his assertion. However, from the perspective of the officers on the scene at the time of executing the arrest warrant, they knocked on the door, announced their presence and were refused entry. Therefore, Defendant's motion to suppress due to a violation of the "knock and announce" requirement is due to be denied.

**C.    Re-Entry**

Finally, Defendant argues that his Fourth Amendment rights were violated when Sergeant Graves conducted a warrantless search of the Stack O Dollar premises. *See* Doc. 15 at 7-8. Specifically, upon execution of the arrest warrant, officers on the scene conducted a protective sweep of the premises after finding Nevels' son inside as well. Once the protective sweep was complete, the officers took note of the items that they saw in plain sight. Since the officers executing the arrest warrant were outside of their jurisdiction, Detective Pelham called Sergeant Graves of the Prattville Police Department and Autuga County Assistant District Attorney Jessica Sanders ("ADA Sanders") to the scene. Sergeant

Graves arrived about five minutes after receiving the call, and Detective Pelham walked Sergeant Graves through Stack O Dollar to view the computers and merchandise that Detective Pelham believed to be a part of a counterfeiting/copyright infringement crime.[6] It was not until after entering Stack O Dollar that Sergeant Graves sought and obtained a search warrant.

"The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337, 110 S. Ct. 1093, 1099-100, 108 L. Ed. 2d 276 (1990). A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327, 110 S. Ct. at 1094; *See U.S. v. Bennett*, 555 F.3d 962, 966-68 (11th Cir. 2009) (protective sweep for weapons under mattress valid because officers, upon finding 3 teenage boys sitting on mattress during arrest of defendant, had reasonable suspicion that boys could have posed a danger to their safety and area under mattress was within the boys' immediate reach); *and U.S. v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) (protective sweep valid because it lasted 1 minute and officers only opened doors leading to areas large enough to harbor persons to determine whether defendant's girlfriend or roommate was inside).

---

[6] Nevels had already been transported to the police station by the time Sergeant Graves arrived on the scene.

Here, upon executing the arrest warrant Detective Pelham, Agent Brown, Sergeant Ray and one other officer performed a protective sweep of Stack O Dollar that lasted no more than one or two minutes and the officers only searched locations where other people could be hiding. *See* Doc. 32 at 76. In addition to Nevels, the officers also found Nevels' son inside of the business. The officers also saw, in plain view, bootleg DVDs, CD/DVD multiplex burning towers, "thousands of counterfeit recording devices," counterfeit currency, and bootleg merchandise such as clothing and handbags. *See* Doc. 32 at 49-50 It is clear to the Court that the protective sweep completed by these officers was proper.[7]

After officers secured the scene, and transported Nevels to the police station, Detective Pelham called Sergeant Graves and ADA Sanders to the scene to let them determine if their jurisdiction would like to pursue the items the officers saw in plain view during their protective sweep. Sergeant Graves arrived on the scene about five minutes later and Detective Pelham walked him through Stack O Dollar. Sergeant Graves testified that he is the computer expert in his jurisdiction and wanted to see the computers that Detective Pelham reportedly saw before properly identifying the evidence in a subsequent affidavit for a search warrant. Sergeant Graves also testified that he did not touch anything in the house, or discover any new evidence not already listed by Detective Pelham, and that he only spent less than five minutes in the computer room and about a minute in the bedroom and front of the business. *See* Doc. 34 at 15-17. Sergeant Graves then spoke with ADA Sanders and

---

[7] The defendant does not contest the legality of the protective sweep.

relayed what was seen in plain sight inside of Stack O Dollar, and asked if the Autauga district attorney's office would want to prosecute Nevels. ADA Sanders decided that the district attorney's office would like to prosecute, and she assisted Sergeant Graves in drafting an affidavit to be used to secure a search warrant. Ultimately, Autuga County District Judge Joy Booth signed off on the search warrant, and it was subsequently executed.

The law is well settled, after an arrest has been made and the suspect has been taken into custody, a search incident to arrest is no longer applicable. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (citing *Agnello v. United States*, 269 U.S. 20, 31, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925)); *see also U.S. v. Chaves*, 169 F.3d 687, 691 (11th Cir. 1999) (search of warehouse invalid partly because officers commenced the search 45 minutes after the arrest was made). "[I]t is to the same effect; the reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house." *Chambers v. Maroney*, 399 U.S. 42, 47, 90 S. Ct. 1975, 1979, 26 L. Ed. 2d 419 (1970) (citing *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968)).

As previously stated, it is undisputed that by the time Sergeant Graves arrived on the scene, Nevels had already been taken into custody pursuant to the arrest warrant, and was at the police station. Nevels was no longer on the scene and the factors that would otherwise

justify a warrantless search were no longer present.  Therefore, the Court finds that Sergeant Graves' reentry into Nevels' business was an illegal search in violation of the Fourth Amendment.

However, this proves a hollow victory for the defendant because here the search is justified by an exception to the warrant requirement of the Fourth Amendment.  In reviewing the "independent source" doctrine, the Eleventh Circuit held:

> Having found that the warrantless entry violated the Fourth Amendment, we must consider whether the results of the subsequent search, conducted after the warrant was finally obtained, should have been suppressed. Under this Circuit's precedents, where, as here, the search warrant affidavit is based on information acquired as a result of an illegal entry, we must look to whether the other information provided in the affidavit is sufficient to support a probable cause finding. *United States v. Glinton,* 154 F.3d 1245, 1254–55 (11th Cir.1998). If so, suppression is not required because "the exclusionary rule has no application where the government learned of the evidence from an independent source," *id.* at 1255, provided, of course, that "the agents' decision to seek the warrant was [not] prompted by what they had seen during the initial entry...." *Murray v. United States,* 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). *Accord United States v. Markling,* 7 F.3d 1309, 1314–18 (7th Cir.1993); *United States v. Restrepo,* 966 F.2d 964, 968–72 (5th Cir.1992); *United States v. Herrold,* 962 F.2d 1131, 1139–44 (3d Cir.1992); *United States v. Gillenwaters,* 890 F.2d 679, 681–82 (4th Cir.1989); *United States v. Salas,* 879 F.2d 530, 536–39 (9th Cir.1989); *United States v. Veillette,* 778 F.2d 899, 903–04 (1st Cir.1985).

*Chaves*, 169 F.3d at 692-93.  Upon review of the search warrant affidavit, this Court finds that the affidavit supports a finding of probable cause.  There is nothing in the record or affidavit indicating that the search warrant includes any items that were not already seen during the legal search incident to arrest.  In fact, the Court questioned Sergeant Graves on that exact point, Sergeant Graves said he saw the same items during his reentry that had

already been seen by other officers during their protective sweep. *See* Doc. 34 at 40-41. Additionally, the testimony of the Detective Pelham indicates that he knew he had probable cause to seek an arrest warrant. However, since he was outside of his jurisdiction, he was required to call Sergeant Graves. *See* Doc. 32 at 51-52. Therefore, it is evident that the decision to seek a search warrant was not based upon what was witnessed by Sergeant Graves during the second entry.

The initial protective sweep that was conducted incident to arrest serves as an independent source for all of the information contained in the search warrant affidavit. Thus, suppression is not required. Had Sergeant Graves listed any items in his search warrant affidavit that had not already been discovered in the initial protective sweep, the Court would suppress those items.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' *Motion to Suppress Evidence and Citations of Authority* (Doc. 15) be DENIED.

It is further ORDERED that the parties file any objections to the this Recommendation on or before **December 20, 2013.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 6th day of December, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE